BOSTON, 1824.

Com'wealth v. Wentworth and Daly.

# DISTRICT COURT, MARYLAND DISTRICT.

## BALTIMORE.

United States
v
Mr. Barney.
} OBSTRUCTING THE MAIL, &c.

Present—Hon.——— *Winchester, J.*

*Winchester, J.* The indictment in this case, which charges the defendant with having wilfully obstructed the passage of the public mail at Susquehanna river, is founded on the act of congress of March, 1799.

The defendant sets up a defence and justification of this obstruction of the mail, that he had fed the horses employed in carrying the mail for a considerable time, and that a sum of money was due to him for food furnished at and before the time of their arrest and detention.

On this state of facts, two questions have been agitated.

1st. Whether the right of an innkeeper to detain a horse for his food, extends to horses owned by individuals,

The right of an innkeeper to detain a horse for his food does not extend to horses owned by individuals, and employed in the transportati'n of the mail. Nor to horses owned by the United States and employed in that service No lien can exist against the government. A mail carrier cannot sue or retain

BALTI-
MORE.

U. States
v.
Barney.

the mail for
his hire. He
must apply to
government,
and if they re-
fuse, the prop-
er course is to
petition con-
gress. A stol-
en horse car-
rying the mail
stage cannot
be seized by
the owner, so
as to retard
the mail. Nor
can the mail
be obstructed
by arresting
the driver for
debt.*

and employed in the transportation of the public mail. And,

2d.   Whether such right extends to horses belonging to the *United States*, employed in that service.

The first question involves the consideration of princi-ples of some extent, and to decide correctly on the second, it may be necessary to state them generally.

Lien is defined to be a tie, hold, or security, upon goods or other things which a man has in his custody until he is paid what is due him.   From this definition it is ap-parent that there can be no lien where the property is an-nihilated, or the possession parted with voluntarily and without fraud.   2 Vern. 117. 1 Atk. 234.

The claim of a lien otherwise well founded, cannot be supported, if there is

1st.   A particular agreement made and relied on. Say-er's Rep. 224.

2d.   Where the particular transaction shows that there was no intention that there should be a lien, but some other security is looked to and relied on.   4 Burr. 2223.

If, therefore, in this case, the agreement between the defendant and the public agent actually was that he should be paid for feeding the public horses on as low terms as any other person on the road would supply them, it could not justify detaining the horses; for the partic-ular agreement thus made, under which the food was

---

*It has been decided (1 Peters, 390.) that the act of congress ought not to be so construed as to shield the carrier of the mail against a temporary stoppage of the mail, by a municipal officer, where it is driving through a populous city at such a rate as to endanger the safety of the inhabitants, contrary to an ordinance of the city.   And that if the officer had a war-rant against a fellow who had placed himself in the stage, or the driver should commit murder in the street, in the presence of the officer, and then place himself on the box, they would not be protected against arrest because a temporary stoppage of the mail would be the consequence.

furnished, is the foundation of the remedy of the defendant, and it can be pursued in no other manner than upon that agreement. Or, if there was no particular agreement, the case is such, that between the defendant and a private owner of horses and carriages employed in transporting the mail, I incline to think it could not legally be presumed a lien was ever intended or contemplated. A carrier of the mail is bound not to delay its delivery, under severe penalties, and it can scarcely be supposed that he would expose himself to the penalty for such delay by leaving his horses subject to the arrest of every innkeeper on the road for their food, or that in such case the innkeeper could look to any other security than the personal credit of the owner of the horses for reimbursement. But the law on such a case could be only declared on facts admitted by the parties, or found by the jury, and is not now before the court.

3d. The great question in this case rests on discrimination between the property of the government and individuals.

To the government is granted by the constitution the general power to lay and collect taxes, duties, imposts, and excise, to pay the debts and provide for the common defence and general welfare of the *United States.*

To raise and support armies:

To provide and maintain a navy:

To establish post offices and post roads:

And to make all laws which shall be necessary and proper for carrying these and all other constitutional powers into effect.

The public money can never be drawn out of the treasury, unless with the consent of the legislature; but whenever a debt is contracted in the establishment of a post-

office, or road, or in the support of an army, or in the provision for raising or supporting a navy, or any other measure of general welfare, the public faith and credit is pledged for its payment; on the public faith and credit advances are made to the government, relying on the constitutional mode of reimbursement. If it were otherwise, what dreadful consequences would not result.

A ship carpenter might libel public ships:

A quarter master retain the supplies of the army. Or, An innkeeper stop the progress of an army for food to horses of a baggage wagon.

Every man must surely deprecate the state of society where no immunity to the government shall be offered by the constitution against such evils. Happily we are not so exposed. Congress only have the power, and they are bound by the most sacred ties of moral obligation and duty to provide for the payment of the public debts. No other remedy exists for a creditor of the government than an application to congress for payment.

A lien cannot be permitted to exist against the government; for liens are only known or admitted in cases where the relation of debtor and creditor exists so as to maintain a suit at law for the debt or duty which gives rise to a lien, in case the pledge be destroyed, or the possession thereof lost. As in the case of the carrier of the mail: he cannot sue for the lien nor retain the mail, because he cannot sue. Yet a carrier of private property may sue or retain, because government is not answerable. Justice is the same whether due from one to a million or a million to one man. But the mode of obtaining that justice must vary. An individual may sue and be sued. The *United States* cannot be sued. Suability is incom-

patible with the idea of Sovereign power. The arbitrary proceedings of a court of judicature can never be admitted against an independent government, or the public stock or property. The ties of faith, public character and constitutional duty are the sure pledges of public integrity, and to them the public creditors must, and I trust with confidence, may look for justice. They must not measure it out for themselves. I have stated these principles, to show, that by law, the defendant could not justify stopping the mail, on principles of common law, as they apply to individuals and to the government.

There are, however, considerations arising from the act of congress which are conclusive to my mind. The statute is a general prohibitory act. The common law, if opposed, must give way to it, and the court is bound to decide according to the correct construction of that law. That the act is constitutional is not, nor indeed can be questioned. It has introduced no exception. Whether the acts which it prohibits were lawful or unlawful before the operation of that law, or independent of it, might or might not be justified, is not material. This law does not allow any justification of a willful and voluntary act of obstruction to the passage of the mail. If, therefore, courts or juries were to introduce exceptions not found in the law itself, by admitting justifications for the breach of the act, which justifications the act does not allow to be made, it would be an assumption of legislative power. Many exceptions might be introduced, and perhaps with propriety. For instance : a stolen horse found in the mail stage, the owner cannot seize him. The drives being in debt, or even committing an offence, can only be arrested in such way as does not obstruct the passage of the mail.

<div style="margin-left:auto">

BALTI-
MORE.

U. States
v.
Barney.

</div>

These examples are as strong as any which are likely to occur, but even these are not excepted by the statute, and probably considerations of the extreme importance to the government and individuals of the regular transmission of public despatches and private communications may have excluded these exceptions. But whatever may have been the policy which led to the adoption of the law, which the court will not inquire into, it totally prohibits any obstruction to the passage of the mail. It is the duty of the court to expound and execute the law, and therefore I am of opinion, and decide that the defendant is not justified.