UNITED STATES v. SEARS.

(District Court, D. Kentucky. April 3, 1893.)

POST OFFICE—OBSTRUCTING MAILS—REFUSAL TO PAY TOLL.
On indictment for obstructing the passage of the mail, the defendant, a toll-gate keeper on a gravel road, cannot justify his act on the ground that the driver of the wagon conveying the mail refused to pay toll in advance, and that by statute (Gen. St. Ky. c. 110, § 3, subsec. 2) toll-gate keepers on gravel roads are authorized to stop persons who refuse to pay in advance from passing and using the road.

At Law. Indictment under section 3995, Rev. St. U. S., containing four counts. By the first count the defendant was charged with knowingly and willfully obstructing the passage of the mail of the United States then and there being carried from Paducah to Benton, Ky.; by the second, with unlawfully, knowingly, and willfully retarding the passage of the mail; by the third, with unlawfully, knowingly, and willfully obstructing the passage of the driver, one Andrew Melbur, who was then and there carrying the mail; and, by the fourth, with unlawfully, knowingly, and

willfully obstructing Melbur, who was then and there a driver of a wagon in which the mail was being conveyed, etc. The case was tried November 21, 1892, and the jury returned a general verdict of guilty. On November 23, 1892, the defendant made motion in arrest of judgment on the ground that he was a toll-gate keeper, and, as such, had the right under the laws of Kentucky (Gen. St. Ky. c. 110, § 3, subsec. 2) to demand and receive tolls in advance, and, the carrier having failed and refused to pay his toll in advance, defendant rightfully denied him passage over the pike, though he thereby obstructed and retarded the passage of the carrier and the mail.

George W. Jolly, U. S. Atty., and W. McD. Shaw, Asst. U. S. Atty. Bishop & Dishman and Gilbert & Kahn, for defendant.

BARR, District Judge. This indictment was under section 3995, which provides that—

"Any person who shall knowingly and willfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying same, shall, for every such offense, be punishable by a fine of not more than one hundred dollars."

There can be no doubt under the evidence that the defendant stopped the mail carrier while he was carrying the United States mail, and that the defendant did this because he did not pay his toll for the use of the gravel road in advance, and also for some toll past due, and that he did this knowing he was the mail carrier, and was at the time carrying the mail. The only questions which were considered by the jury under the instructions of the court were whether he could lawfully stop said mail carrier, and whether the stoppage under the circumstances was "willful," within the meaning of this section.

The state statute authorized the defendant, who was a toll-gate keeper on a gravel road, to collect in advance the toll for the use of the road, and to stop persons from passing through the gate and using the road who did not pay their toll in advance. See chapter 110, § 3, subsec. 2, Gen. St. Ky.[1] But this statute did not and could not authorize a toll-gate keeper to stop a mail carrier while he was carrying the mail, because he did not pay in advance the toll for the use of the road. The authority of the United States was supreme in that matter, and if the defendant did knowingly and willfully obstruct or detain the mail of the United States he cannot defend by proving that he had the state of Kentucky's authority to thus obstruct and detain the mail. If the authority to obstruct or detain the passage of the United States mails be conceded to the states for a purpose like this, there can be

[1] Gen. St. Ky. c. 110, § 3, subsec. 2, is as follows: "All tolls are to be paid at the several gates at the time they are passed, or in advance, unless, by agreement with the managers of the road, a special permit is obtained to pass for a month or other longer term, not exceeding a year. If not so paid, the gate keeper may stop any person, and prevent him or his property from passing until payment is made."

no limitation to the power to prevent the passage of the mails in and through the states at all. It is not intended to indicate that a state may not grant any remedy it chooses in the enforcement or collection of tolls on bridges or roads which do not encroach upon the rights and powers of the United States, but we think whatever remedies may be granted are subordinate to the power and authority of the United States under the federal constitution. Nor is it intended to assert that the United States can take private property for this public use without just compensation. It is not the right of the company to the tolls under the state law which is doubted, but the right to stop the passage of the mails to enforce their collection which is denied. Congress had, under the constitution, the authority to enact this section, and the only question in this case is whether the defendant Sears did "knowingly and willfully" obstruct or retard the passage of the mail or the mail carrier while he was carrying the mail.

This question seems to be answered in the opinion of the supreme court. In U. S. v. Kirby, 7 Wall. 485, the court say:

"The statute of congress by its terms applies only to persons who 'knowingly and willfully' obstruct or retard the passage of the mail or its carrier,— that is, to those who know that the acts performed will have that effect, and perform them with the intention that such shall be their operation. When the acts which create the obstruction are in themselves unlawful, the intention to obstruct will be imputed to their author, although the attainment of other ends may have been his primary object. The statute has no reference to acts lawful in themselves, from the execution of which a temporary delay to the mails unavoidably follows. All persons in the public service are exempt, as a matter of public policy, from arrest upon civil process while thus engaged. Process of that kind can therefore furnish no justification for the arrest of a carrier of the mail. This is all that is decided by the case of U. S. v. Harvey, [8 Law Rep. 77, 1 Brunn. Col. Cas. 540,] to which we are referred by the counsel of the government. The rule is different when the process is issued upon a charge of felony."

In that case Farris had been arrested on a bench warrant issued on an indictment charging him with murder, and the court decided the sheriff, who had arrested him while carrying the mail, had not willfully obstructed or detained the mail or a mail carrier. But if, as the court declared, Farris had been arrested under a civil process by the sheriff, and thereby obstructed or detained the passage of the mail, the sheriff would have been within this section (3995) of the law, how can it be claimed that a toll-gate keeper who, to collect toll in advance, obstructs and detains the passage of the mail, is not within this section, and does not violate the law? In U. S. v. Barney, 3 Hughes, 545, 12 Myers, Fed. Dec. 244, decided in 1810, the court decided that the lien on horses for their keep cannot be enforced in a manner to stop the passage of United States mail in a stage coach drawn by the horses upon which the lien was claimed. In U. S. v. McCracken, 3 Hughes, 544, Judge Hughes dismissed an indictment under this section where the offense as proven was the refusal of the stable keeper to allow a horse in his stable to be taken out to be used for carrying the mail unless his lien claim was paid him for keeping the horse. This was because the section did not apply, as there was no obstruction or detention of

the mail while it was in transitu, but the court seemed to assume that the offense would have been made out had the obstruction been while the mail was being carried from one place to another. The cases of U. S. v. De Mott, 3 Fed. Rep. 478, and U. S. v. Kane, 19 Fed. Rep. 42, sustain the view herein indicated. In the case of U. S. v. Harvey, 1 Brunn. Col. Cas. 543, Chief Justice Taney says:

"We do not consider the warrant a justification to the officer. Yet the mere serving of the warrant would not render the party liable to an indictment under the law; but if, by serving the warrant, he detained the carrier, he' would then be liable. We do not construe the term 'willfully' in the same sense as the traverser's counsel. If the traverser, by serving the warrant, detained the carrier, then he 'willfully' detained him in the sense that word is used in the act of congress."

In that case a constable had arrested a mail carrier while he was carrying the mail, by virtue of a warrant in an action of trespass quare clausum fregit, but the detention was only for a short time, and the carrier got to the next office at his usual hour.

Although the facts surrounding the case should be considered in the sentence, we cannot consider the state statute a justification for the stoppage of this mail carrier while he was transporting the mail, and I must therefore overrule the motion to arrest the judgment on the verdict of the jury, and it is so ordered.